Argued and submitted April 17, 2001, affirmed March 27, 2002

In the Matter of the Compensation of
Joshua D. Beaver, Claimant.

Joshua D. BEAVER,
*Petitioner,*

*v.*

THE MILL RESORT AND CASINO
and SAIF Corporation,
*Respondents.*

99-01967; A110473

43 P3d 460

James C. Coffey argued the cause for petitioner. With him on the briefs was Stebbins & Coffey.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Claimant seeks review of a Workers' Compensation Board (board) order denying him compensation for injuries that he suffered when he was struck by a car while he was walking in a public crosswalk on his way to work. In particular, claimant challenges the board's conclusion that he was not injured in the course of employment. We review the board's factual findings for substantial evidence and its legal conclusions for errors of law. ORS 183.482(8). We affirm.

We draw from the facts as found by the administrative law judge (ALJ), which the board incorporated into its order and summarized. Employer owns and operates a gaming casino for the Coquille Indian Tribe. Claimant is an employee at the casino. The casino is located on the east side of Highway 101 in North Bend, Oregon. As a result of the construction of employer's casino, traffic in the area around the casino has increased. Employer provides two parking lots for use by the casino's guests and employees. One (the west lot) is located on the west side of Highway 101 directly across from the casino. The other lot (the north lot) is located on the same side of Highway 101 as the casino, and sits north of the casino and parallel to the highway. To reach the casino from the west lot, guests and employees must cross Highway 101 at a public crosswalk controlled and operated by the state. Employer also provides a shuttle bus service that transports employees and guests from the West lot to the casino.

Employer's policy is to reserve the "prime parking" for its guests. To that end, employer advises its employees to park either in the west lot or at the far end of the north lot. The parking policy provides, in relevant part:

"All employees of the Mill Casino will park across the street in the parking lots available to us there or beyond the 'Good Show' sign in the North parking lot."

On December 5, 1998, claimant parked his car in the west lot. On his way to the casino, claimant activated the crosswalk sign and, when it indicated that he could proceed, he began to cross Highway 101. While claimant was in the crosswalk, he was hit by a car that was turning out of the casino's driveway and onto Highway 101.

Employer denied claimant's claim for workers' compensation benefits. At the hearing before the ALJ, employer argued that claimant's injury fell within the "going and coming" rule and, thus, was not compensable because it was not an injury occurring in the "course of employment." *See* ORS 656.005(7)(a) (defining "compensable injury"). In response, claimant argued that the circumstances of his injury brought it within the "greater hazard exception" to the "going and coming rule" because he was exposed to a greater degree of risk than the general public when he used the crosswalk. The ALJ agreed with claimant and determined that the claim was compensable.

Employer sought review by the board, and the board reversed. Drawing on Supreme Court cases, the board concluded that the greater hazard exception applies when an employee uses an entrance to or exit from work and the employee is exposed to a hazard to a greater degree than the general public. *See Nelson v. Douglas Fir Plywood Co.*, 260 Or 53, 57, 488 P2d 795 (1971). Applying that standard, the board concluded that the greater hazard exception did not apply because the facts of claimant's injury did not satisfy either component of the greater hazard exception. Consequently, the board determined that the claim was not compensable. On review, the parties renew the arguments that they made to the board.

 Only those injuries that "aris[e] out of" and occur "in the course of employment" are compensable under the workers' compensation laws. ORS 656.005(7)(a). The "arise out of" prong requires a causal link between the worker's injury and his or her employment. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997); *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996); *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The requirement that the injury occur "in the course of" the employment relates to the time, place, and circumstances of the injury. *Krushwitz*, 323 Or at 526. Those two prongs form a single "work-connection" test of the relationship between the worker's injury and his or her employment. *Fred Meyer, Inc.*, 325 Or at 596; *Krushwitz*, 323 Or at 526. The work-connection test may be satisfied if the factors supporting one

prong of the statutory test are weak while the factors supporting the other prong are strong; both prongs, however, must be satisfied to some degree. *Fred Meyer, Inc.*, 325 Or at 596.

■ Generally, injuries sustained while going to or coming from work do not satisfy the "in the course of employment" prong and are not compensable. *Krushwitz*, 323 Or at 526. The rationale for that "going and coming" rule is that the relationship between an employer and a worker ordinarily is suspended from the time the worker leaves work to go home until he or she returns to the workplace and resumes work. *Id.* While the worker's journey to the workplace may be work connected, the employee does not render a service for the employer during the time that he or she is coming and going. *See id.*

■ ■ The "greater hazard" exception is one of several exceptions to the general rule that an injury sustained while going to and coming from work is not compensable. *Kiewit Pacific v. Ennis*, 119 Or App 123, 126, 849 P2d 541 (1993). As the board correctly observed, the greater hazard exception applies "[i]f the employee's employment requires [the employee] to use an entrance or exit to or from * * * work which exposes [the employee] to hazards in a greater degree than the common public." *Nelson*, 260 Or at 57. The exception is fact dependent and applies only in limited circumstances— *i.e.*, when "an employee is injured while traveling upon the only means of ingress to or egress from the employer's premises *and* some 'greater hazard' exist[s] upon that route." *Krushwitz*, 323 Or at 529 (emphasis in original).

Claimant first argues that the board misapplied the applicable test by requiring that claimant be injured using the "only" means of ingress or egress to the workplace. In so arguing, claimant relies on our decision in *Kiewit Pacific*, in which we affirmed a board order that held the claim compensable where, at the time of the injury, the claimant was turning into the employer's parking lot using the most direct, but not the only, route into the lot. 119 Or App at 125-26. In *Kiewit Pacific*, the turn from the public road into the employer's parking lot required employees to come to a near stop. The general public, on the other hand, proceeded

straight ahead and did not stop and turn at the same place. *Id*. at 125. Thus, only employees were required to encounter the risk of turning at that particular place. *Id*. Notwithstanding the other routes for the claimant to take, we affirmed the board's conclusion that there was a sufficient work connection where the route taken by the claimant was the most direct one, the claimant was required to park there, and the hazard to the claimant was one not faced by the general public. *Id*. at 128.

Claimant views the board's resolution here as inconsistent with *Kiewit Pacific*. According to claimant, the board held his injury not compensable because employer had provided more than one parking lot and because there existed more than one route to and from the lot where claimant had parked. That is not, however, an accurate view of the board's reasoning. Rather, the board identified the existence of alternative means of entrance and exit into the workplace as one factor to consider in the analysis. Specifically, the board cited *Nelson*, 260 Or at 57, for the proposition that an injury is compensable if an employee's use of an entrance or exit to work exposes the employee to a hazard in a greater degree than the public generally. The board further observed, as had the Supreme Court in *Krushwitz*, 323 Or at 529, that the circumstances in which such claims have prevailed often have involved an exclusive means of ingress and egress that created a greater hazard to employees than to the general public. The board then considered to what extent claimant's chosen route was the exclusive means of ingress and egress and to what extent that route exposed claimant to a greater risk of injury than the public generally. The board's consideration of both factors in assessing the nature of the hazard was fully consistent with prior cases and, in particular, with the Supreme Court's decision in *Krushwitz*. There was no legal error in the board's approach.

The only remaining question, then, is whether the board's finding that claimant did not satisfy his burden to demonstrate that his claim was compensable under the "greater hazard" exception is supported by substantial evidence and substantial reasoning. *See Villafuerte v. Unger Farms,* 136 Or App 487, 901 P2d 936 (1995) (testing board's

conclusion on "greater hazard" exception for substantial evidence); *Kiewit Pacific*, 119 Or App at 127 (same). In its order, the board observed that employer provided two parking lots in which employees and the public could park; that "when claimant parked in the west parking lot, he had no choice but to cross Highway 101 in order to get to the work premises"; and that, because a shuttle was available to take patrons and employees to and from the casino from the west lot, claimant "was not traveling upon the only means of ingress to or egress from" the casino. The board then continued its analysis by assessing the extent to which the public used those same routes of travel and, thus, the extent to which the risk of injury in crossing Highway 101 was the same or different for employees than for the general public:

> "In this case the general public also parked in the same parking lot. The employer provided a shuttle to take patrons and employees to and from the casino and west parking lot on request. Therefore, claimant was not traveling upon the only means of ingress to or egress from his place of employment. Moreover, patrons and employees who chose to walk across the street were alike required to cross Highway 101 in order to get to the casino. Members of the general public, therefore, encountered the same risk as claimant when they walked to the casino using the crosswalk."

The board concluded that claimant had not carried his burden to establish the compensability of his injury because the crosswalk was not an exclusive route for claimant to take to the casino *and* because the risk of injury in taking that route was the same for claimant as for the general public.

The board's determination is supported by both substantial evidence and substantial reasoning. Here, the record provides ample support for the board's conclusion that parking in the west lot did not subject claimant to any risk of injury greater than that to which the general public was exposed. That is so for two reasons. First, although claimant argues that the risk was greater for him because he parks in the west lot on a daily basis and thus more frequently than members of the general public, he did not provide any evidence to support that assertion. As the board observed in its order, "there is no evidence that claimant actually parked in

the west lot every day and crossed the highway twice a day." Second, and of equal significance, that fact would not distinguish him from the general public, which likewise may regularly park in the west lot and use the crosswalk on a daily basis. To be sure, perhaps no one member of the general public might use the crosswalk with the frequency that any one employee might. But the comparison to be made is between an employee and the *general* public, not the employee and a particular member of the general public.[1] The board found, and the record supports, that the general public has the same options for parking, walking, and shuttling to and from the casino that employees have (with the exception that the public can park closer to the casino in the north lot). The risk of injury for employees therefore is not different from or greater than the risk encountered by the general public that traverses the same routes. Because the board's findings in those regards are supported by the record, the board did not err.

Affirmed.

---

[1] If that were the comparison, the going and coming rule would be swallowed. The particular route followed by an employee from his or her home to a particular workplace will often be unique as compared to members of the public generally, with the result that the employee will inevitably be exposed to the hazards of that route to a greater degree than any other member of the public.