Argued and submitted July 18, remanded for reconsideration October 26, 1988

In the Matter of the Compensation of
Barbara P. Brown, Claimant.

BROWN,
*Petitioner,*

*v.*

ARGONAUT INSURANCE COMPANY et al,
*Respondents.*

(WCB 86-03915; CA A46551)

763 P2d 408

Kenneth D. Peterson, Jr., Hermiston, argued the cause for petitioner.

Michael G. Bostwick, Portland, argued the cause for respondents. With him on the brief was Davis and Bostwick, Portland.

Before Warden, Presiding Judge, Graber, Judge, and Van Hoomissen, Judge pro tempore.

GRABER, J.

## GRABER, J.

Claimant seeks review of an order of the Workers' Compensation Board (Board) that reversed the referee's assessment of a penalty and attorney fees against Argonaut. We review for substantial evidence and errors of law, ORS 656.298(6), and remand for reconsideration.

In 1983, claimant suffered a compensable injury to her left elbow, which was diagnosed as tennis elbow.[1] In January, 1986, claimant returned to her treating physician, Dr. Carpenter, complaining of pain in her left arm. Carpenter referred claimant to Dr. Eisler. Both Eisler and Carpenter wrote reports about their examinations. At Carpenter's request, Eisler examined claimant again on February 18, 1986. In a letter to Carpenter, he concluded that claimant's "symptoms are more likely to be the so-called resistant tennis elbow syndrome" than any alternative diagnosis. The Board found that Argonaut received Eisler's February 18 letter on April 7.

Carpenter sent claimant a bill dated February 6, 1986. Claimant received it and, she testified, shortly thereafter sent it to Argonaut. On February 20, 1986, Argonaut issued a timely partial denial, which said:

"The medical reports we have received indicate you are suffering from conditions described as Reynaud's Phenomena and ulnar nerve irritation. We are unable to accept responsibility for these conditions, as they appear to be unrelated to your accepted claim for left tennis elbow. * * * However, we wish to reaffirm our acceptance of responsibility for your industrial injury of April 1, 1983, which resulted in left tennis elbow."

Claimant requested a hearing on whether her new condition related to the compensable injury.

On June 7, 1986, Eisler wrote to Argonaut, repeating his conclusion that claimant's "diagnosis is a resistant tennis elbow syndrome." On July 11, 1986, shortly before the hearing, Argonaut changed its position and agreed that claimant's new symptoms stemmed from her compensable tennis elbow.

---

[1] Several months after surgery for that injury, claimant developed a small lipoma near her left elbow. She filed a claim, which was resolved by a disputed claim settlement. The settlement provided that it "does not affect claimant's right under the compensable accepted claim for the left tennis elbow condition."

Accordingly, Argonaut agreed to pay claimant's medical expenses but continued its denial of Reynaud's Phenomenon and ulnar nerve irritation "to the extent they exist."

Because Argonaut agreed that claimant's new symptoms resulted from her compensable injury, there was no issue of compensability or payment for medical services at the hearing. However, the referee assessed a penalty and attorney fees against Argonaut for unreasonable delay and resistance to paying claimant's medical expenses. *See* ORS 656.262(10); ORS 656.382(1). The Board reversed.[2]

We first address the applicable standard of review. Whether a denial or delay is unreasonable involves both legal and factual questions. We review for errors of law in examining whether the Board applied the correct legal standard. ORS 183.482(8)(a). That standard is whether, from a legal standpoint, Argonaut had a legitimate doubt as to its liability. If so, the denial was not unreasonable. *Norgard v. Rawlinsons,* 30 Or App 999, 1003, 569 P2d 49 (1977). "Unreasonableness" and "legitimate doubt" are to be considered in the light of all the evidence available to the insurer. *See Ginter v. Woodburn United Methodist Church,* 62 Or App 118, 122, 659 P2d 434 (1983).

Using the legal standard, the Board makes a factual finding about reasonableness. *See Lester v. Weyerhaeuser Co.,* 70 Or App 307, 311, 689 P2d 342, *rev den* 298 Or 427 (1984). We review that finding for substantial evidence. ORS 183.482(8)(c); *see also Williams v. SAIF,* 31 Or App 1301, 1305, 572 P2d 658 (1977).

In this case, the Board found that Argonaut reasonably denied the claim, because it had a legitimate doubt as to its liability, on February 20. The Board then reasoned:

---

[2] The referee affirmed Argonaut's partial denial of Reynaud's Phenomenon and ulnar nerve irritation. Claimant did not make a contrary argument to the Board, no doubt because Argonaut had denied conditions that were not at issue. Argonaut agreed to pay all of claimant's medical bills on the basis that they were related to the compensable tennis elbow injury. Consequently, the Board's order addressed only those issues that the parties argued before the Board and this court: the penalty and attorney fees. The Board's order concluded, "The referee's order dated July 29, 1986, is reversed." On these facts, we construe the Board's order to reverse only as to those issues that it addressed, namely, the penalty and attorney fees award. On remand, the Board should correct the oversight.

> "[T]he insurer's February 20, 1986, denial was issued within the 60 days period for notice of acceptance or denial provided by statute. ORS 656.262(6). Furthermore, since it had already denied responsibility for claimant's current problems, it was not necessary for the insurer to issue another denial for the same problems after it received Dr. Eisler's February 18, 1986 report. Consequently, we do not find the insurer's failure to respond to Dr. Eisler's February 1986 report unreasonable."

It is unclear whether the Board meant that, as a matter of law, an insurer that timely and properly denies a claim has no duty to reevaluate the denial when it receives a later medical report *or* that, as a matter of fact, Argonaut had a legitimate doubt about its liability even after it received Eisler's report.

If the Board meant the former, then it applied the wrong standard. After an insurer reasonably denies a claim for medical services on the basis that they were unrelated to the compensable condition, continuation of that denial in the light of new medical evidence becomes unreasonable if, but only if, the new evidence destroys any legitimate doubt about liability. *See Price v. SAIF,* 73 Or App 123, 126, 698 P2d 54 (1985); *Norgard v. Rawlinsons, supra,* 30 Or App at 1003.[3]

Even if the Board applied the correct legal standard, its order is not sufficient to permit our review for substantial evidence. *See Armstrong v. Asten-Hill Co.,* 90 Or App 200, 205, 752 P2d 312 (1988). First, the Board made insufficient findings about the February 20 denial, which it concluded was reasonable. Because reasonableness depends upon an evaluation of all the evidence available to the insurer when it acted, a necessary first step is to determine what evidence Argonaut had when it denied the claim. The record is unclear on that point, and the various medical reports are inconsistent, but neither the referee nor the Board made the required findings. Second, the Board did not make *any* findings to support its conclusion that the February 20 denial, if reasonable, did not become unreasonable in the light of later medical reports.

Remanded for reconsideration.

---

[3] No statute or previous case addresses this issue directly.